TATE, Judge.
This is a suit for compensation by an injured employee. The plaintiff appealed from a judgment of the trial court awarding him compensation for temporary total disability for six additional months from a medical examination of September 14, 1954, or terminating on March 14, 1955, together with interest, costs and unpaid medical expenses. Suit was filed on August 3, 1954, trial was had on September 28th and October 7, 1954, and judgment rendered as described on the latter date.
Whiddon, plaintiff employee, was injured on May 28, 1954, in the course of his employment with Concrete Pipe Products Company, Inc., a domestic corporation. Whid-don, a truck driver, attempted to shift some pipes and caught his hand and arm under the pipe. In attempting to extricate himself, he wrenched his lower back.
The company physician, Dr. W. G. Fisher, treated Whiddon for the injury to his hands and right shoulder' and for a- complaint of back pain, finally hospitalizing Whiddon under traction for the latter complaint between June 18th and June 22, 1954. Following a disagreement with Dr. Fisher, Whiddon left the Lake Charles hospital and reported for treatment by his personal physician in DeRidder.[1]
Whiddon was examined by two specialists, namely, Dr. Edmund C. Campbell on July 22, 1954, and again on September 27, 1954; and by Dr. George P. Schneider of Lake Charles on SeptemberT4, 1954.
Both of these physicians found that Whid-don had sustained a moderately severe back sprain and was still disabled as of the dates of their examinations from performing the duties of a truck driver or heavy laborer. These diagnoses were supported by objective symptoms of muscle spasm, although inconstant, and also by the patient’s history, complaints, and other medical indicia.
Since these orthopedic specialists had estimated that with supervised treatment, or even possibly without it, the plaintiff could recover in from four to six months, the learned trial judge awarded plaintiff compensation for six months beyond September 14, 1954, the date of Dr. Schneider’s examination, ending on March 14,1955.
This award was made under LSA-R.S. 23:1222, which statute reads:
“Probable duration of disability as basis for compensation. For injury producing temporary total or temporary partial disability the court may, in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability.”
The plaintiff-appellant, on the other hand, contends that under the jurisprudence when the duration of total disability is indefinite, the correct procedure is to allow compensation during disability, not to exceed the maximum period, or four hundred weeks.
Both orthopedic specialists upon whom the trial court relied in finding that plaintiff was totally disabled at the time of trial to perform his duties, testified that probably it would take approximately from four to six months under supervised treatment, depending however upon the plaintiff’s reaction to the treatment.[2] , ■
We believe that when the period of disability is indefinite, the correct procedure is to allow compensation during disability, not to exceed the statutory maximum; Vilce v. Travelers Ins. Co., La.App., 24 So.2d 485, Id., La.App., 25 So.2d 256; Gilmore v. *441 George W. Gang Transfer, Inc., La.App., 33 So.2d 99; Colbert v. Smith & Campbell, La.App., 39 So.2d 757; Strother v. Standard Accident Insurance Co., La.App., 63 So.2d 484. The employee is thus protected against the possibility that the disability may persist beyond any arbitrary period fixed actually by mere speculation of the medical experts, while on the other hand the employer is protected since he may re-open the matter for trial after six months following the date of final rendition of the judgment under LSA-R.S. 23:1331 (if and when the condition of the employee changes for the better).
Defendant has cited Delahoussaye v. D. M. Glazer & Co., La.App., 185 So. 644, in support of its position. While language in this opinion tends to support the position of defendant, it may be noted that it rests in part upon the finding, 185 So. 645: ‘'There seems to be no doubt from all the medical testimony adduced that had plaintiff followed the instructions • given to him he would long ago have recovered entirely from the effects of the injury.” (Italics ours.) In the present case, the estimated future disability is admittedly a “rough approximately” (Tr. 47). Further, the more recent cases cited supra indicate that when the disability is of indefinite duration, compensation should be fixed so as not to exceed the maximum number of weeks.
In the present case, for instance, Dr. Edmund C. Campbell on his initial examination of the claimant, on July 22, 1954, estimated that the plaintiff would be relieved of his symptoms, within six to eight weeks. However, on September 27th (two months later) he found that the original prognosis was incorrect and that an additional four to six months probable disability beyond September 27th was indicated. (Tr. 62.) It would be speculation to say that on March 15, 1955, at the end of this later six months, on re-examination yet another four to six months or greater disability might not be prophesied.
’ Both orthopedic specialists upon whom the trial court relied in holding plaintiff totally disabled agreed that the injury was not of a serious nature, and that the disability while persisting beyond the average was “temporary” in that it'would come to an end within a period well short of 300 weeks under supervised treatment or even in the course of nature. Since there is no conflict as to whether this total disability is *442 “permanent” under LSA-R.S. 23:1221(2) rather than “temporary” under LSA-R.S. 23:1221(1) as existed in Strother v. Standard Accident Insurance Co., La.App., 63 So.2d 484, it would appear that the disability should be denoted as “temporary total disability”; and compensation allowed during disability as provided in the latter statutory provision not to exceed three hundred weeks, see Gay v. Stone & Webster Engineering Corp., La.App., 191 So. 745; Hall v. Shreveport Medical Arts Building Corp., La.App., 39 So.2d 628; Willet v. American Automobile Insurance Co., La. App., 42 So.2d 570; Reed v. Zurich General Accident & Liability Ins. Co., 51 So.2d 840.
It should be noted that both orthopedic specialists agree that plaintiff is in need of further medical treatment, and the right is expressly reserved unto plaintiff (should defendant refuse to provide same) to reopen these proceedings below even in advance of the six months to recover reasonable additional medical expenses of treatment incurred as a result of injuries and disability sustained as a result of the accident in the course of his employment with defendant, not of course to exceed the un-expended portion of the statutory medical allowance.
For the reasons above assigned, the judgment of the trial court is affirmed insofar as it awarded plaintiff compensation, but amended to provide that there be judgment herein in favor of plaintiff awarding him workmen’s compensation benefits at the rate of $30 per week, beginning May 28, 1954, during the duration of his disability not to exceéd 300 weeks in all, with 5 per cent interest on all past due installments from their respective due dates until paid, further affirming the award of the trial court of medical expenses and court costs. Plaintiff is reserved the right to reopen these proceedings below for the purpose of recovering additional reasonable medical expenses resulting from the accident in the course of his employment with defendant, within the unexpended statutory medical allowance, should defendant refuse to provide same. Cost of this appeal to be paid by defendant and appellee.

. Dr. Fisher saw Mm once again, on September 20, 1954, immediately prior to the trial, and found no objective evidence of disability.

. For example, note the following testimony of Dr. Schneider, Tr. 47:
“Q. At this time you can’t give any definite duration of his disability, can you?
A. That is true.
“Q. It would just depend on how he reacted to the treatment? A. That is correct.
“Q. Could you give any rough ap *441 proximation of when you think he would be all right? A. I would approximate it at from four to six months.
“Q. Could be longer and might be less. A. Yes, that is true.”
See also Dr. Campbell's testimony, Tr. 58:
“Q. Doctor, if there any way you can fix any fairly definite time as to when he would recover? A. No.”
And Dr. Campbell again at Tr. 62:
“Q. And at this time do you not feel, as X understand it, that you can give any time for a relief from his symptoms?
A. I do not remember the exact statement I made on direct examination.
“Q. I may be wrong but I think you said you did not know how long he would have these symptoms if he took the necessary treatment or did the proper exercises. A. I made a similar statement but will amend it to some extent. As near as I can state from my two examinations I still feel this man should be relieved with the supervised treatment mentioned. At this time I don’t think that any other treatment would be indicated, though such might be felt so after further observation. I feel that under supervised treatment his period of total disability — I would like to amend that. I feel that he should be completely relieved of the symptoms within four to six months from the date such treatment was instituted, and probably able to perform reasonably heavy labor and possibly even his previous work at some time prior to that.
“Q. In your opinion this symptoms he has would not be classified as a serious injury? A. As near as I can state, no.”
In answer to questions by the Court, Dr. Campbell further testified as follows:
Tr. 65:
“The Court: In the event he would take all of the exercises that you instructed him to take on his first visit, is it your opinion that he would be able to do all his former duties within four to six months? A. As near as we can predict, yes, ■ sir.”